# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

JOHN MEZZALINGUA ASSOCIATES, LLC,

                      Plaintiff,                5:19-cv-00368 (BKS/TWD)

v.

DARLENE BRAUNSCHWEIG,

                      Defendant.

---

**Appearances:**

*For Plaintiff:*
Robert J. Smith
Cristopher M. Militello
Costello, Cooney & Fearon, PLLC
500 Plum Street, Suite 300
Syracuse, NY 13204-1401

*For Defendant:*
Lauren M. Paxton
OlenderFeldman LLP
1180 Avenue of Americas, 8th Floor
New York, NY 10036

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff John Mezzalingua Associates, LLC filed a complaint in New York Supreme Court, Onondaga County against Defendant Darlene Braunschweig, a former employee, for breach of contract (First Claim) and tortious interference with prospective business relations (Second Claim). (Dkt. No. 2). On March 26, 2019, Defendant removed this action under 28 U.S.C. § 1446 to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. Nos. 1, 2). Defendant now moves under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to

state a claim. (Dkt. No. 7). Plaintiff opposes. (Dkt. No. 12). For the reasons set forth below, the motion is denied as to Plaintiff's breach of contract claim and granted as to the tortious interference claim.

## II. FACTS[1]

Plaintiff is a limited liability corporation located in Liverpool, New York "engaged in the business of manufacturing products and software for use in the construction of 5G wireless communication networks." (Dkt. No. 2, ¶¶ 1, 5). Defendant was employed by Plaintiff as "Vice President, Business Development from November 17, 2014 until December 11, 2017" and "represented [Plaintiff] in negotiations to have its products used in the buildout of 5G wireless network capabilities for the Resort World casino" "currently under construction in Las Vegas, Nevada."[2] (*Id.* ¶¶ 6, 8). While employed by Plaintiff, Defendant was "privy to trade secrets and confidential information essential to the success of [Plaintiff's] business," including, but not limited to, "client lists, corporate relationships, and products and services offered by [Plaintiff] and its competitors." (*Id.* ¶¶ 6–7). As a result of Defendant's position with Plaintiff, "the information" she possessed "posed a threat" to Plaintiff's "economic viability and success . . . if disclosed to third parties." (*Id.* ¶ 7).

Upon Defendant's "separation from employment" with Plaintiff, the parties "entered into a Severance Agreement" in which they "agreed to certain stipulations," including "consideration,

---

[1] The facts are drawn from the Complaint. (Dkt. No. 2). The Court assumes the truth of, and draw reasonable inferences from, those well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] While the parties occasionally refer to this entity as "Resorts World," they primarily refer to it as "Resort World," and the Court does as well.

2

terms, and requirements."[3] (*Id.* ¶ 9) The Severance Agreement contains the following restrictive covenant:

> In consideration for the Severance Benefits provided for under this Agreement, the Employee agrees, that for a period of six (6) months following the execution of this Agreement, that she will not, directly or indirectly, own, manage, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business competitive with the Company. Furthermore, Employee agrees that following her separation from employment, she will not directly or indirectly affect and/or disrupt any of the Company's pending or future sales.

(Dkt. No. 7-3, at 3). "As consideration for the restrictions on Defendant's activity," she was paid a total of $132,500.00. (Dkt. No. 2, ¶ 12).

In or about August 2018, "Defendant became employed with Strategic Venture Partners" ("SVP"). (*Id.* ¶ 13). SVP is an "'integrator' in the field of wireless communications" that provides "design, financing and related services to project owners seeking to build out wireless communications capabilities." (*Id.*). In September 2018, SVP was "retained as an 'integrator' on the Resort World casino project." (*Id.* ¶ 14). As an SVP employee, Defendant "assist[ed] Resort World in selecting an original equipment manufacturer for hardware to be used in building out Resort World's wireless network." (*Id.*).

On or about September 24, 2018, Plaintiff's employees Daniel Cassinelli, Chris Wixom, and Eli Fischer contacted Defendant to express Plaintiff's "interest in providing the hardware needed for Resort World's wireless network project." (*Id.* ¶ 15). Defendant responded that Resort World had not yet "selected a vendor to provide the equipment needed for the project and that she would provide [Plaintiff] with the information needed to provide a competitive bid." (*Id.* ¶

---

[3] Defendant has attached a redacted copy of the Severance Agreement as Exhibit A to its motion to dismiss. (Dkt. No. 7-3). Since the Severance Agreement is referenced in and integral to the Complaint, the Court may consider it in ruling on this motion. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

15). Defendant was "instrumental and exercised great influence over Resort World's selection of an original equipment manufacturer for its network project." (*Id.* ¶ 16).

On or about December 12, 2018, Wixom and Fischer met with Chad Mostats, Resort World's Vice President of Information Technology, regarding its network project. (*Id.* ¶ 17). During this meeting, Mostats stated that "he was relying on Defendant and SVP to make recommendations on the design and procurement of equipment for the network project" and referred Wixom and Fischer to Defendant regarding Plaintiff's "interest in bidding to provide the equipment for the project." (*Id.*).

That same day, after meeting with Mostats, Wixom and Fischer "met with Defendant regarding the Resorts World network project." (*Id.* ¶ 18). During this meeting, "Defendant expressed that she has a strong connection with SOLiD Gear, Inc." ("SOLiD"), Plaintiff's "primary competitor in bidding upon the Resorts World Project," and that Defendant believed Plaintiff's "cost to supply equipment would be $1,500,000 more" than SOLiD's price, despite the fact that Plaintiff "had not submitted a formal bid or price quotation." (*Id.*). Defendant further "stated her belief that [Plaintiff] could not compete for the Resort World contract." (*Id.*).

Wixom and Fischer requested that Defendant provide them with the "design schematics and specifications for the project" so that Plaintiff could provide an "apples to apples" bid for the project. (*Id.* ¶ 19). Defendant "stated she would provide the requested information and materials." (*Id.*). On or about December 14, 2018, Defendant had not provided the "materials and information" for Plaintiff to prepare a bid on the Resort World network project, so Cassinelli followed up by phone with Defendant. (*Id.*). Defendant "reiterated her commitment" to provide Plaintiff with the "design schematics" and afford Plaintiff the "opportunity to fairly compete for the contract to provide the equipment for Resorts World's network project." (*Id.* ¶ 20). Wixom

4

also placed a follow-up call to Defendant "inquiring about the information and materials she had pledged to provide to [Plaintiff] so that it could fairly bid on the Resorts World project." (*Id.* ¶ 21). Defendant "yet again promised . . . Wixom that she would provide [Plaintiff] with the information and materials necessary to prepare a fair, competitive bid on the Resorts World network project." (*Id.*).

In or about early January 2019, "cabling for the Resorts World project commenced" with materials specified for use with products made by SOLiD. (*Id.* ¶ 22). Defendant, knowing that Plaintiff "had not been provided the information and materials it needed to fairly bid on the Resorts World project, recommended to Resorts World that the contract to provide equipment for its network project" be awarded to SOLiD. (*Id.* ¶ 23). Defendant did so "without providing [Plaintiff] a fair opportunity to bid on the contract," "with intent to harm [Plaintiff]," "disrupt its sales activity," and provide SOLiD with "a competitive advantage with respect to bidding" for the Resort World contract. (*Id.* ¶¶ 24, 35).

Upon learning Plaintiff had "lost the opportunity to fairly bid on the Resorts World project," Plaintiff "sent Defendant a written notice dated January 25, 2019, stating that she had breached her obligations to [Plaintiff] as set forth in Severance Agreement." (*Id.* ¶ 25). Plaintiff "demand[ed] repayment of all severance payments that she received under the Severance Agreement." (*Id.*). Defendant has "not tendered repayment of the severance payments as demanded." (*Id.* ¶ 26).

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations

5

sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV. DISCUSSION

### A. Breach of Contract (First Cause of Action)

Defendant argues Plaintiff has failed to state a plausible breach of contract claim because (1) Plaintiff's allegations fall outside of the Severance Agreement's six-month non-compete clause and (2) Plaintiff does not allege that Defendant "engaged in any conduct that disrupted a future sale." (Dkt. No. 7-1, at 8–9). Plaintiff counters that it has "allege[d] actions and inactions by Defendant which plausibly affected and/or disrupted Plaintiff's efforts to sell equipment to Resort World," including her recommendation "to Resort World [that] the contract . . . be awarded to Plaintiff's competitor before Plaintiff could submit a bid." (Dkt. No. 12-2, at 9).

"To state a claim for breach of contract under New York law,[4] the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure

---

[4] Where, as here, the "parties' briefs assume that New York law controls, . . . such implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted)

6

of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.,* 938 F.3d 8, 12 (2d Cir. 2019).

The parties disagree as to whether the third prong has been satisfied. That is, they disagree as to whether Defendant has failed to perform her obligations under the Severance Agreement. Defendant argues that the Complaint fails to allege that she disrupted or affected a future sale. (Dkt, No, 7-1, at 8–9). However, given the broad language of the restrictive covenant, and the specific allegations concerning the Defendant's role in selecting a vendor for the wireless network project; her knowledge of the Plaintiff's interest in submitting a bid; her repeated promises that she would provide the information and materials necessary to for it to bid yet failing to follow through; and her recommendation that the contract be awarded to Plaintiff's competitor before Plaintiff could submit a bid, Plaintiff has plausibly alleged that Defendant prevented it from making a fair bid on the project and "directly affect[ed] a future sale." (Dkt. No. 2, ¶¶ 7, 17, 19–21, 24, 32).

Defendant's argument that the non-interference clause was, like the non-compete clause, limited to a six-month period following the Severance Agreement is not supported by the language of this provision. (*See* Dkt. No. 7-1, at 8). While Defendant agreed not to compete with the Plaintiff "for a period of six months following the execution of" the Severance Agreement, there is no time restriction on her agreement not to affect or disrupt Plaintiff's pending or future sales. (*See* Dkt. 7-3, at 3 ("Furthermore, Employee agrees that *following her separation from employment*, she will not directly or indirectly affect and/or disrupt any of the Company's

pending or future sales.") (emphasis added)).[5] Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's breach of contract claim.

## B. Tortious Interference with Prospective Business Relations[6] (Second Cause of Action)

Defendant argues Plaintiff fails to state a claim for tortious interference with prospective business relations because Plaintiff fails to allege (1) "that [Defendant's] conduct was directed at Resort World, the third-party with whom Plaintiff sought a relationship," (Dkt. No. 7-1, at 9; Dkt. No. 15, at 7–8), and (2) that Defendant acted "solely acted out of malice" towards Plaintiff, or "used improper or illegal means." (Dkt. No. 7-1, at 9; Dkt No. 15, at 5–7). Defendant argues that by "Plaintiff's own account" SVP selected SOLiD for the Resort World project, "due to its better pricing." (Dkt. No. 7-1, at 10; Dkt. No. 15, at 9–10). Plaintiff argues that "Defendant's misrepresentation and purposeful withholding of information from Plaintiff's representatives interfered with Plaintiff's prospective sale to Resort World for the sole purpose of harming Plaintiff." (Dkt. No. 12-2, at 11).

Under New York law, a plaintiff claiming tortious interference with prospective business relations must show (1) "the defendant's interference with business relations existing between the plaintiff and a third party," (2) "*either* with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 69 (2d Cir. 2019) (quoting *PPX Enters., Inc. v. Audiofidelity Enters.,*

---

[5] The parties have not addressed, and the Court does not consider the reasonableness of the restrictive covenant. *See Installed Bldg. Prods., LLC v. Cottrell*, No. 13-cv-1112, 2014 WL 3729369, at *6–8, 2014 U.S. Dist. LEXIS 101926, at *22–23 (W.D.N.Y. July 25, 2014).

[6] The Court, the parties, and the governing caselaw varyingly use the terms "tortious interference with prospective business relations," "tortious interference with prospective business opportunity," and "tortious interference with prospective economic advantage." "Regardless of the appellation employed, the elements necessary to establish such a claim remain constant." *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987), *abrogated on other grounds by Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 n.9 (2d Cir. 1998).

*Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)). But where "the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *Id.* (quoting *PPX Enters.,* 818 F.2d at 269).

To satisfy the first prong, "the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997)). Here, Plaintiff plausibly pleads direct interference with Resort World, a third party. Chad Mostats from Resort World allegedly told Plaintiff's employees that he was "relying on" Defendant and her employer, SVP, "to make recommendations on the design and procurement of equipment for the network project." (Dkt. No. 2, ¶ 17). And Defendant allegedly "recommended to Resorts World that the contract . . . for its network project be awarded to SOLiD," Plaintiff's main competitor for the project. (*Id.* ¶¶ 17, 23). The Complaint further alleges that Defendant, through meetings and phone calls with Plaintiff's representatives, was aware that Plaintiff was interested in bidding on the Resort World project. (*Id.* ¶¶ 18–21). Thus, the Court finds Plaintiff has plausibly alleged that Defendant "intentionally caused [Resort World] not to enter into a contractual relationship with [Plaintiff]." *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (explaining that it is "axiomatic" that the plaintiffs would have to "show [the defendants'] intentionally caused" third parties "not to enter into a contractual relation with them").

Plaintiff, however, cannot satisfy the second prong. Plaintiff has not plausibly alleged that Defendant acted either (1) by means that are "dishonest, unfair, or in any other way improper" or (2) "with the sole purpose of harming the plaintiff." *IQ Dental Supply*, 924 F.3d 57

at 69. To establish the former, "as a general rule," Plaintiff must show that Defendant's conduct "amount[ed] to a crime or an independent tort." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) (alterations in original)). Here, Plaintiff does not appear to argue that Defendant's conduct was criminal or independently tortious, cabining its argument to the theory that "Defendant's misrepresentation and purposeful withholding of information from Plaintiff's representatives interfered with Plaintiff's prospective sale to Resort World for the sole purpose of harming Plaintiff." (Dkt. No. 12-2, at 10–11).[7]

Plaintiff also does not plausibly allege that Defendant acted for the "sole purpose" of harming Plaintiff. *IQ Dental Supply*, 924 F.3d 57 at 69. To that end, Plaintiff's Complaint characterizes Defendant's actions related to the Resort World Las Vegas network project as "purposeful and malicious" and asserts that they "were undertaken for the sole purpose of inflicting harm on Plaintiff" and that they "had no economic or business justification." (Dkt. No. 2, ¶¶ 25, 35). These conclusory allegations, however, are insufficient.

First, those allegations are undercut by others in the Complaint. Plaintiff alleges that Defendant: had information about "products and services offered by [Plaintiff] and its competitors," (*Id.* ¶ 7), "expressed that she had a strong connection" with SOLiD, (*Id.* ¶ 18), "expressed . . . that she believed [Plaintiff's] cost" for the project would be $1.5 million more than SOLiD's, (*id.*), and "stated her belief that [Plaintiff] could not compete" for the Resort

---

[7] To the extent Plaintiff contends that Defendant's repeated statements that she would provide the necessary information for Plaintiff to submit a bid on the Resort World project and then failed to do so were misrepresentations amounting to improper means, (*see* Dkt. No. 12-2, at 10–11), courts in this Circuit, following the New York Court of Appeals' decision in *Carvel*, have held that "misrepresentations alone do not amount to 'wrongful means.'" *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008) (quoting *Berwick v. New World Network Intern., Ltd.*, No. 06-cv-2641, 2007 WL 949767, at *14, 2007 U.S. Dist. LEXIS 22995, at *46 (S.D.N.Y. March 28, 2007), *aff'd*, 321 F. App'x 58 (2d Cir. 2009)); *see also, e.g.*, *Treppel v. Biovail Corp.*, No. 03-cv-3002, 2005 WL 427538, at *8, 2005 U.S. Dist. LEXIS 2737, at *25 (S.D.N.Y. Feb. 22, 2005) (dismissing tortious interference claim where false statements by defendants could not "sustain a claim for defamation or any other tort").

World contract. (*Id.*). These allegations suggest that Defendant's conduct, as SVP's representative, was "intended, at least in part, to advance its own competing interests" and not "with the sole purpose of harming the plaintiff." *IQ Dental Supply*, 924 F.3d 57 at 69 (quoting *PPX Enters.*, 818 F.2d at 269); *see also JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 536 (S.D.N.Y. 2013) (finding an allegation that the defendant "acted solely out of malice" was "not only conclusory" but also "inconsistent with plaintiffs' other allegations that [the defendant] interfered with plaintiffs' relationships to gain a competitive advantage").

Second, the Complaint's allegations that Defendant acted "malicious[ly]" and with the "sole purpose of inflicting harm on Plaintiff," (Dkt. No. 2, ¶¶ 25, 35), amount to "legal conclusions couched as factual allegations." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 453 (S.D.N.Y. 2014) (dismissing tortious interference with prospective economic relations claim where "the Amended Complaint merely assert[ed] that Defendant acted with malice and improper means without any legitimate business justification") (quotation marks omitted); *see also, e.g.*, *Campeggi v. Arche Inc.*, No. 15-cv-1097, 2016 WL 4939539, at *9, 2016 U.S. Dist. LEXIS 124814, at *23 (S.D.N.Y. Sept. 14, 2016) ("[A] bare assertion that a defendant acted out of malice will not suffice."); *Samsung Display Co. v. Acacia Research Corp.*, No. 14-cv-1353, 2014 WL 6791603, at *5, 2014 U.S. Dist. LEXIS 167569, at *14 (S.D.N.Y. Dec. 3, 2014) (dismissing tortious interference with business relations claim where complaint contained only "a threadbare recitation of the tort's third element . . . unaccompanied by any allegation that [the defendant's] conduct was criminal, independently tortious, or solely motivated by a desire to inflict intentional harm on [the plaintiff]"); *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490–91 (S.D.N.Y. 2013) (dismissing claim for tortious interference with business relations where "aside from th[e] conclusory statement" that the defendants acted "with actual malice and ill will" the

complaint did not "allege facts that give rise to the plausible inference that the defendants acted with the 'sole purpose of inflicting intentional harm'" on the plaintiff (quoting *Carvel*, 3 N.Y.3d at 190)). As such, the Court finds the Complaint fails to state a claim for tortious interference with a prospective business relationship.

Plaintiff has not requested leave to amend; nor has it identified any facts that could be alleged in an amended complaint to cure this deficiency. The Court therefore declines to *sua sponte* grant leave to amend. *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) (noting that since "an amendment is not warranted [a]bsent some indication as to what [plaintiffs] might add to their complaint to make it viable, the District Court was under no obligation to provide the [plaintiffs] with leave to amend their complaint, must less provide such leave *sua sponte*") (first alteration in original) (internal quotation marks and citation omitted).

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 7) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 7) is **DENIED** as to Plaintiff's Breach of Contract claim (First Cause of Action); and it is further

**ORDERED** that Plaintiff's Tortious Interference with Prospective Business Relations claim (Second Cause of Action) is **DISMISSED.**

**IT IS SO ORDERED.**

Dated: January 14, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge